CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

Patricia L. Wright,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Civil Action No. 5:25-cv-00021
                                       )
Select Bank *et al.*,                  )
                                       )
                    Defendants.        )


## MEMORANDUM OPINION

This matter is before the court on Defendants Select Bank's and Patrick E. Berrang's motions to dismiss Plaintiff Patricia L. Wright's amended complaint (Dkts. 23, 100), Wright's motion for leave to file a second amended complaint (Dkt. 76), Wright's motion for leave to file a corrected second amended complaint (Dkt. 105), and Wright's motion for leave to file a third verified amended complaint (Dkt. 130). For the reasons that follow, the court will grant Select Bank's and Berrang's motions to dismiss and deny Wright's motions for leave to amend.[1]

---

[1] Wright has filed numerous other motions that are currently pending, including several motions for a temporary restraining order, multiple motions requesting assistance with service of process, a motion to compel Select Bank to produce certain documents, a "motion to deny Defendant's request to impose filing restrictions," a motion for trial by jury, a "motion to quiet title and for final relief," a motion to vacate and strike a state-court order, and a "motion to enforce TILA rescission." Because the court will dismiss all of Wright's claims, it will deny all of Wright's other pending motions as moot.

# I.    Background[2]

This case arises from a state-court lawsuit seeking the partition or sale of a residential property in Highland County, Virginia.  Wright and Berrang, her then-boyfriend, purchased the property on October 18, 2022.  (Verified Compl. ¶¶ 19, 26 (Dkt. 1) [hereinafter "Compl."]; Am. Compl. ¶ 7 (Dkt. 5).)  The purchase was financed by a loan from Select Bank to Berrang.  (Compl. ¶ 10; *see* Dkt. 10-12.)    Berrang and Select Bank executed a promissory note in connection with the loan.  (Dkt. 10-13.)  Wright was not a party to the promissory note but was involved in other aspects of the transaction.  Along with Berrang, she is a co-grantor on a deed of trust for the property that secures the loan.  (Compl. ¶¶ 10, 28; *see* Dkt. 9 at 4.)  Select Bank is the beneficiary of the deed of trust, with J. Michael Thomas and Seth E. Twery, PC,[3] named as trustees.  (*See* Dkt. 9 at 4.)  Wright also signed a closing disclosure form, (Dkt. 10-3), and at closing, the property was deeded to both Berrang and Wright, (Dkt. 10-10).

Wright told Berrang that she would not move into the house with him unless they were married and the house was paid off.  (Compl. ¶ 22.)  Berrang agreed, and Wright moved into the house in December 2023.  (*Id.* ¶¶ 22–23.)  Berrang broke off the relationship later that month and "admitted to lying" about getting married and paying for the house.  (*Id.* ¶¶ 23–24.)

---

[2] The facts in this section are taken from Wright's pleadings and exhibits and are accepted as true when resolving the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  Wright's amended complaint includes even fewer factual allegations than appeared in her original, verified complaint.  The court will construe Wright's *pro se* pleadings liberally and treat the factual allegations in the original complaint as part of her amended complaint and her proposed second and third amended complaints.

[3] Some of Wright's filings use the spelling "Towery" instead of "Twery."

In January 2024, Berrang filed a partition suit in the Circuit Court of Highland County, Virginia, naming both Wright and Select Bank as defendants. (*Id.* ¶¶ 11, 29.) Wright retained an attorney who later withdrew from the case. (*See id.* ¶ 30.) There is no indication that Select Bank has ever taken action to enforce the terms of the promissory note or deed of trust.

On March 14, 2025, as the state partition suit was nearing an end, Wright filed a *pro se* action in this court. Her original complaint named Select Bank, Berrang, Thomas, and Twery as defendants. (*Id.* at 1.) It alleged that Select Bank violated several federal mortgage and lending laws, including the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Garn-St. Germain Act, and 18 U.S.C. § 1014. (*Id.* ¶¶ 18, 39.) Wright also alleged that the terms of the loan agreement with Select Bank were fraudulent and unconscionable under Virginia law. (*Id.* ¶¶ 17, 39.) In addition to her claims related to the mortgage transaction, she asserted a due process claim under the United State Constitution based on alleged "judicial bias, prosecutorial misconduct, and conflicts of interest" in the state partition proceedings, and she attempted to remove the partition suit to this court. (*Id.* ¶¶ 1, 13, 40–42.)

Wright filed a separate motion for a temporary restraining order ("TRO") asking the court to temporarily stay the partition suit and sale of the property and remove the partition suit to federal court. (Dkt. 2.) This court denied the TRO motion. (Dkt. 4.) It held that it lacked the authority to stay the state-court proceedings and informed Wright that she had not properly removed the partition suit to this court. (Dkt. 3 at 4–8.) The court also advised Wright that her original complaint did not plead enough facts to state any claim for relief. (*Id.*

at 6.)  It warned Wright that it may dismiss her complaint if she did not file an amended complaint that corrected the defects.  (*Id.*)

Wright filed an amended complaint on March 20, 2025.  (*See* Am. Compl.)  The amended complaint contains even fewer factual allegations than Wright's original complaint, but it does expand on her legal claims.  Wright alleges that she exercised her right to rescind the mortgage transaction under TILA on March 19, 2025, but "Defendants refused to cancel the security interest or return payments as required by 15 U.S.C. § 1635(b)."  (*Id.* ¶¶ 1–2, 8–10.)  She alleges that the mortgage documents contain several "predatory and illegal terms" that violated provisions of TILA, RESPA, the Garn-St. Germain Act, a federal bankruptcy statute, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, "UDAP laws," her due process rights, and various state laws.  (*See id.* ¶¶ 12–27; Dkt. 6 at 2–3.)  The amended complaint asks the court to award damages, declare the mortgage rescinded, and order "Defendant" to cancel the security interest on the property, remove all claims on the property, and return all payments made under the loan.  (Am. Compl. at 4.)  Wright also continued asking the court to remove and enjoin the partition suit.[4]  (*Id.*)

Select Bank and Berrang each moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[5]  (Dkts. 23, 100.)  Wright moved for leave to file a second amended complaint, (Dkt. 76), and later moved for leave to file a corrected

---

[4] Wright also filed a separate notice of removal in this court attempting to remove the partition suit.  *See Berrang v. Wright et al.*, No. 5:25-cv-00056 (filed June 9, 2025).  The court remanded that case on June 30, 2025, after finding that it lacked subject matter jurisdiction over the partition suit and that Wright had failed to comply with the requirements for removal under 28 U.S.C. § 1446.  *See id.*, Dkts. 28, 29.

[5] At the time they filed their respective motions to dismiss, Select Bank and Berrang both stated that they had not received proper service.  (*See* Dkt. 24 at 2; Dkt. 101 at 3.)

second amended complaint, (Dkt. 105). Wright's corrected proposed second amended complaint names the same four defendants as her original complaint: Select Bank, Berrang, Thomas, and Twery. (Corrected Prop. Second Am. Compl. at 1 (Dkt. 105-1) [hereinafter "Prop. SAC"].) Like the amended complaint, it contains very few factual allegations. (*See id.* ¶¶ 7–24.) It continues to allege violations of TILA and RESPA but does not mention the other claims related to the mortgage transaction that appear in the amended complaint. (*See id.* ¶¶ 22–30.) It "seeks a declaration confirming [Wright's] rescission, voided lien, and right to remain in the property," asks the court to impose a constructive trust on the property "due to the unlawful retention of title and ongoing attempts to circumvent federal rescission protections," and once again requests temporary injunctive relief against the partition proceedings. (*Id.* ¶¶ 31–34.) Wright also reiterates her concerns with the fairness of the partition suit and seeks "a declaration that her [due process] rights were violated and that any order issued without [a partition] hearing is null." (*Id.* ¶¶ 35–42.)

Wright then moved for leave to file a third verified amended complaint. (Dkt. 130.) Her proposed third amended complaint continues to allege TILA and RESPA claims against Select Bank but focuses primarily on challenging recent developments in the state partition suit. Wright seeks to name two additional defendants: Jeffrey Ward, the attorney representing Berrang in the partition suit, and Melissa Dowd, a former state prosecutor who along with Ward was appointed as a special commissioner in the partition suit.[6] (*See* Prop. Third Am. Compl. (Dkt. 130-1) [hereinafter "Prop. TAC"].) Wright's claims against Ward and Dowd

---

[6] The first version of Wright's proposed second amended complaint had named Ward and Dowd as defendants but included fewer allegations about their role in the partition suit. (*See* Dkt. 76-3 at 1.)

stem from their role in preparing a special commissioners deed, dated June 9, 2025, which transferred full ownership of the disputed property to Berrang pursuant to a May 7, 2025 state-court order. (*See* Dkts. 130-15, 130-20.) Wright alleges that Ward and Dowd's actions violated several federal and state laws. (*See* Prop. TAC at 8–14, 16–21.) The proposed third amended complaint also alleges a series of new state-law claims against Berrang related to his alleged misrepresentations and role in the partition suit. (*See id.* at 12–15, 18–19.)

Since filing her amended complaint, Wright also has filed dozens of exhibits and "notices" that provide additional information and argument about the mortgage transaction and partition suit. In addition, she has filed numerous motions seeking various forms of emergency and/or final relief. The court entered separate orders denying several of those motions on May 2, 2025, and May 23, 2025. (Dkts. 39, 85.) Since then, Wright has filed numerous additional motions, notices, and declarations, including multiple motions requesting a TRO. (*See* Dkts. 107, 109, 116, 117, 128.) Wright also recently filed a "motion to remove" Thomas and Twery as defendants in this case. (Dkt. 124.)

## II.    Standards of Review

### A.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant may bring either a facial or factual challenge to subject matter jurisdiction. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge, which Select Bank and Berrang raise in response to some of Wright's claims, "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

- 6 -

2009) (internal quotation marks omitted).  "[T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*

## B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  In addition to the facts alleged in the complaint, the court may consider documents attached to the complaint as exhibits or explicitly incorporated into the complaint by reference.  Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166.  To avoid dismissal under Rule 12(b)(6), the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

## C. Rule 15(a)

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend their complaint "once as a matter of course," provided they meet certain deadlines. Fed. R. Civ. P. 15(a)(1). Where, as here, a plaintiff has previously filed an amended complaint, the plaintiff may amend again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* It should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (emphasis omitted) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile when "the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). Courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

## D. Liberal Construction of *Pro Se* Pleadings

Finally, the court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating *pro se* litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). At the same time, though, liberal construction "does not transform the court into an advocate"

for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.    Analysis

When the court denied Wright's first motion for a TRO, it advised her that her original complaint did not allege enough facts to state any plausible claim for relief. (*See* Dkt. 3 at 6.) The amended complaint Wright filed in response includes even fewer factual allegations. For the most part, it lists the alleged violations of law in a conclusory fashion without providing much, if any, factual support for the claims. Mindful of its obligation to construe *pro se* pleadings liberally, the court has treated the allegations in Wright's original complaint as part of her amended complaint and proposed second and third amended complaints. The court also has considered the dozens of exhibits, notices, and other filings Wright has submitted when evaluating whether she has offered enough facts to state any claim for relief.

Upon reviewing Wright's pleadings, exhibits, and other filings and the briefing on the motions to dismiss, the court concludes that Wright has not stated any plausible claim for relief in her amended complaint or her proposed second or third amended complaints. In addition, Wright has not shown that certain claims are ripe for judicial review, so this court lacks subject matter jurisdiction to hear them. The following sections outline the reasons Wright's claims against each Defendant are subject to dismissal.

#### A. Claims Alleged Against Select Bank

Most of Wright's claims focus on alleged misconduct by Select Bank related to the October 18, 2022 mortgage transaction. Wright alleges that Select Bank violated her due

process rights and one or more provisions in several federal statutes, including TILA, RESPA, 18 U.S.C. § 1014, RICO, the Garn-St. Germain Act, and a federal bankruptcy statute. She also alleges several different violations of Virginia law. The court will begin by addressing the claims that arise under federal law.

1. Claims under TILA and Regulation Z

Several of Wright's pleadings focus primarily on alleging that Select Bank failed to honor her rescission of the mortgage transaction under TILA, 15 U.S.C. § 1601 *et seq.*, and its implementing regulation, known as "Regulation Z," 12 C.F.R. Part 1026. On March 18, 2025, Wright sent Select Bank a "Notice of Rescission" in which she claimed that she did not receive the legally required disclosures and notices when she and Berrang closed on the property. (Dkt. 9 at 23.) In the notice, Wright asserted that Select Bank had an obligation to (1) cancel the mortgage and release the lien on the property, (2) return all payments made toward the loan, and (3) provide written confirmation that the loan had been rescinded and voided. (*Id.* at 24.) She now claims that Select Bank failed to comply with those obligations in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 1026.23. (*See* Am. Compl. ¶¶ 8–11; Prop. SAC ¶¶ 23–26; Prop. TAC at 6.)

Section 1635 authorizes a consumer[7] to rescind certain "consumer credit transaction[s] . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). The statute then exempts certain transactions from the right to rescission. One of the

---

[7] Courts have held that the right to rescind extends to consumers who "have an ownership interest in the property that is the subject of the transaction and for whom the property is their principal dwelling," even if they are not a party to the credit agreement. *Va. Cmty. Bank v. Fisher*, No. 3:09cv354, 2009 WL 4430282, at *5 (E.D. Va. Dec. 1, 2009) (quoting *Kuechler v. Peoples Bank*, 602 F.Supp. 2d 625, 630 (D. Md. 2009)).

transactions exempted is a "residential mortgage transaction." *Id.* § 1635(e)(1).  A "residential mortgage transaction" is defined as "a transaction in which a mortgage, *deed of trust*, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(x) (emphasis added); *see* 12 C.F.R. § 226.2(a)(24).

The transaction in this case is exactly the type of "residential mortgage transaction" that is exempted from TILA's rescission provisions.  Berrang executed the promissory note with Select Bank to finance the purchase of the residential property, and the note was secured by the deed of trust on the property.  (*See* Dkt. 9 at 4–5.)  Wright has made clear that the property is her primary residence.  (*See, e.g.*, Prop. SAC ¶ 22.)  The transaction therefore is exempted from rescission under § 1635(e), and Wright has no statutory right to rescind it.  *See, e.g.*, *Va. Cmty. Bank v. Fisher*, No. 3:09cv354, 2009 WL 4430282, at *6 (E.D. Va. Dec. 1, 2009) (holding that grantors of a deed of trust could not rescind a promissory note under § 1635 because the loan was part of a "residential mortgage transaction").

Wright separately claims that Select Bank violated 15 U.S.C. § 1641(g), which requires that a borrower receive notice from a new owner or assignee of a mortgage loan when the loan is sold or otherwise transferred.  (*See* Compl. ¶ 39.)  But she has not alleged any facts that suggest Select Bank is an assignee of the loan at issue here, so she cannot state a claim based on § 1641(g).

2.  Claims under RESPA and Regulation X

Wright alleges that Select Bank engaged in unlawful mortgage servicing practices in violation of RESPA, 12 U.S.C. § 2601 *et seq.*, and its implementing regulation, known as "Regulation X," 12 C.F.R. Part 1024.  (*See* Compl. ¶¶ 16, 39; Prop. SAC ¶¶ 27–30; Prop. TAC at 7.)  RESPA and Regulation X require lenders, mortgage brokers, and home-loan servicers to provide borrowers with certain disclosures about the nature and costs of the real estate settlement process, prohibit kickbacks, and limit the use of escrow accounts.  *See* 12 U.S.C. § 2601 *et seq.*; 12 C.F.R. § 1024.1 *et seq.*

Wright first claims that Select Bank violated 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.36 when it "failed to respond to a Qualified Written Request seeking accounting, securitization records, and note ownership information under RESPA."  (Prop. SAC ¶¶ 28–30; *see* Prop. TAC at 7.)  Wright attempted to send a qualified written request to Select Bank on March 18, 2025.  (*See* Dkt. 9 at 25–27.)  Section 2605(e) requires a servicer of a federally related mortgage loan to respond to a qualified written request "from the borrower (or an agent of the borrower) for information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  A loan servicer who fails to comply with the statutory disclosure requirements is liable to the "borrower" for damages.  *Id.* § 2605(f).

Neither RESPA nor Regulation X defines the term "borrower."  *See Kelly v. Nationstar Mortg., LLC*, No. 2:20-cv-24, 2020 WL 6790989, at *2 (E.D. Va. July 14, 2020); 12 U.S.C. § 2602; 12 C.F.R. §§ 1024.2, 1024.31.  But "'there is ample judicial authority' indicating that the term 'borrower' means the borrower on the loan obligating that person to pay off the loan financing the purchase of the property and *not* the person(s) named in mortgage documents

securing the lender's interest in the property itself." *Kelly*, 2020 WL 6790989, at *2 (quoting *Sharp v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 4771291, at *4–5 (D.N.H. Aug. 11, 2015)); *see Watson v. HomeBridge Fin. Servs., Inc.*, No. GJH-20-2578, 2022 WL 125278, at *7 (D. Md. Jan. 13, 2022). Instead, "only people who are personally obligated under a loan—those who signed [a promissory note] or assumed it—can be borrower[s] under RESPA." *Kelly*, 2020 WL 6790989, at *2 (quoting *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019)) (alteration in original).

Wright does not qualify as a "borrower" under this framework, as she is not obligated under the promissory note to pay off the loan that financed the purchase of the property. While Wright is a part-owner of the property, a co-grantor of the deed of trust, and is listed as a borrower on a closing disclosure form, none of those designations confers "borrower" status to Wright under RESPA. *See id.*; *Sharp*, 2015 WL 4771291, at *6; *see also Wilson v. JPMorgan Chase Bank, N.A.*, No. Civ. 2:09-863, 2010 WL 2574032, at *1, 9 (E.D. Cal June 25, 2010) (dismissing a RESPA claim based on a qualified written request where the plaintiff who submitted the request was a joint owner of the mortgaged property but the loan was made to her husband alone). Nor do any facts suggest that Wright was acting as an agent of Berrang, the sole "borrower," when she sent Select Bank the request in March 2025. As such, Wright has not stated a claim against Select Bank under § 2605(e) or 12 C.F.R. § 1024.36.

Wright's proposed third amended complaint alleges a few additional violations of RESPA and Regulation X. She claims that Select Bank failed to identify the loan owner or master servicer upon receiving a written request, in violation of 12 U.S.C. § 2605(k)(1)(D). (Prop. TAC at 7.) That provision prohibits a servicer of a federally related mortgage from "fail[ing] to respond within 10 business days to a request from a borrower to provide the

identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D). This claim also fails because Wright has not shown she qualifies as a "borrower" under RESPA.

Wright next alleges that Select Bank failed "to conduct a proper investigation and issue a written explanation" as required by Regulation X. (Prop. TAC at 7.) Wright does not cite a specific regulation to support this claim, but she may be referring to 12 C.F.R. § 1024.36 or to 12 C.F.R. § 1024.35, which requires servicers to take certain steps to respond to a notice of error from a "borrower." Again, because Wright has not plausibly alleged that she is a "borrower" under RESPA or Regulation X, she cannot state a claim based on those regulations.

So, too, with Wright's final claim under Regulation X, which alleges that Select Bank violated 12 C.F.R. § 1024.41(g). (Prop. TAC at 7.) That regulation limits a servicer's ability to conduct a foreclosure sale when a "borrower" submits a loss mitigation application during foreclosure proceedings. In addition to failing to show that she qualifies as a "borrower," Wright has not alleged that Select Bank has initiated foreclosure proceedings, which are different than the partition suit Berrang has filed.

Accordingly, Wright has not stated any claim for relief under RESPA or Regulation X.

3.  Mortgage fraud (18 U.S.C. § 1014)

Wright claims that Select Bank engaged in predatory and fraudulent lending practices in violation of 18 U.S.C. § 1014. (Compl. ¶¶ 18, 39.) Section 1014 is a criminal statute; it does not create a private right of action for a civil remedy. *See Fed. Sav. & Loan Ins. Corp. v. Reeves*,

816 F.2d 130, 137–39 (4th Cir. 1987). Wright cannot state a claim for relief based on that statute.

    4.  <u>RICO</u>

The prayer for relief in Wright's amended complaint asks the court to award her damages under 18 U.S.C. § 1964(c), which is part of the RICO Act. (Am Compl. at 4.) In another filing, Wright alleges that Select Bank's "systemic predatory lending practices, misrepresentation of loan terms, and securitization fraud amount to a pattern of racketeering activity." (Dkt. 6 at 2.) She further claims that Select Bank committed mail and wire fraud when "processing fraudulent loan documents." (*Id.*)

A civil RICO claim under § 1962(c), which Wright appears to allege, requires a plaintiff to show "(1) conduct [causing injury to business of property] (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also* 18 U.S.C. § 1961(1) (defining "racketeering activity"). Wright's bare allegations do not plausibly support a RICO claim against Select Bank. *See Bonilla-Mead v. McCabe, Weisberg and Conway, LLC*, Civ. Action No. PX-18-3113, 2018 WL 5279487, at *2 (D. Md. Oct. 24, 2018) (stating that "[i]ncantations of the RICO statute or generalized statements about RICO actions are not sufficient" to state a RICO claim). To the extent Wright attempts to allege a RICO claim, that claim will be dismissed.

    5.  <u>Claims challenging terms of mortgage agreement</u>

Wright's amended complaint lists numerous mortgage terms she says violate federal statutes, including other provisions of TILA and RESPA, the Garn-St. Germain Act (12 U.S.C. § 1701j-3), and a federal bankruptcy statute (11 U.S.C. § 362); her due process rights; "privacy

laws"; and state contract and tort law.  (*See* Am. Compl. ¶¶ 12–27.)  Wright's pleadings do not identify the specific agreement(s) in which each allegedly unlawful term appears.

Select Bank argues that these claims are not ripe for review.  (Mem. in Supp. of Select Bank's Mot. to Dismiss at 10–11 (Dkt. 24).)  Ripeness is a constitutional limitation on federal jurisdiction that originates in the "case or controversy" requirement of Article III.  *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022).  "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'"  *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)).  "A case is not ripe for judicial determination 'if the plaintiff has not yet suffered injury and any future impact remains wholly speculative.'"  *Whitaker*, 42 F.4th at 206 (quoting *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)).  The plaintiff bears the burden of establishing ripeness.  *Id.*

Wright has not met that burden here.  None of her pleadings or other filings indicates that Select Bank has attempted to enforce any of the allegedly unlawful terms against her. There is no concrete dispute between Wright and Select Bank, as any harm remains purely hypothetical and contingent on future events.  *See Forbes v. Atl. Bay Mortg. Grp., LLC*, No. 5:24-CV-00048, 2024 WL 3837902, at *1 (W.D.N.C. Aug. 14, 2024) (dismissing claim to invalidate a note and deed of trust as unripe because the plaintiff had not alleged that defendants had sought to foreclose on the mortgaged property or otherwise assert their rights under the agreements).  The lack of ripeness also prevents Wright from seeking declaratory relief in relation to these claims, as federal courts may grant declaratory judgments only in "case[s] of actual controversy."  28 U.S.C. § 2201(a).

Because Wright's claims challenging the mortgage terms are not ripe for review, the court will dismiss those claims for lack of subject matter jurisdiction.[8]

6. <u>Other state-law claims</u>

Most, if not all, of Wright's state-law claims appear to focus on the terms of the mortgage documents, which are unripe. To the extent that Wright intended to allege any other state claims against Select Bank, this court would decline to exercise supplemental jurisdiction over them after dismissing all federal claims. *See* 28 U.S.C. § 1367(c)(3). There is no basis for exercising diversity jurisdiction over the state claims under 28 U.S.C. § 1332, as Wright and at least one defendant (Berrang) are both citizens of Virginia. (*See* Compl. ¶¶ 4, 6.) The court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). "[G]enerally, when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Id.* (citation omitted). In deciding whether to exercise supplemental jurisdiction, the court weighs multiple factors, including "judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the court concludes that the relevant factors weigh in favor of dismissal.

---

[8] Even if these claims were ripe, they are far too threadbare to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

## B. Claims Alleged Against Berrang

Wright also does not state any claim for relief against Berrang under federal law. Nearly all the claims she alleges in the amended complaint and proposed second amended complaint concern the terms of the mortgage documents and her attempt to rescind the mortgage transaction. It is unclear how Berrang—the borrower and co-grantor of the deed of trust— could be liable for those claims, which focus on alleged misconduct by Select Bank. In fact, the amended complaint does not mention Berrang a single time. The proposed second amended complaint makes a conclusory allegation that Berrang committed "fraud and deception" and mentions Berrang's relationship with a substitute judge in Highland County, but it does not allege any federal claim against Berrang. (Prop. SAC ¶¶ 37–38.) The proposed third amended complaint alleges several state claims against Berrang related to his alleged misrepresentations to Wright and his role in the partition suit. (*See* Prop. TAC at 12–15, 18– 19.) In the absence of any federal claim, the court will decline to exercise supplemental jurisdiction over those claims.

## C. Claims Alleged Against Thomas and Twery

Wright has moved to voluntarily dismiss her claims against Thomas and Twery without prejudice. (Dkt. 124.) Because neither Thomas nor Twery has been served or appeared in this case, the court will treat Wright's motion as a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1). That Rule allows a plaintiff to dismiss an "action" without a court order by filing a notice of dismissal before the opposing party serves either an answer or motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i). Although Rule 41(a)(1) refers to the dismissal of an "action" rather than the dismissal of individual defendants, the "weight

of judicial authority" holds that the Rule permits a plaintiff to voluntarily dismiss all claims against a particular defendant. *See DeVito v. Biomet, Inc.*, No. 5:23-CV-00185, 2024 WL 1289542, at *1 (E.D.N.C. Mar. 26, 2024) (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2362 (4th ed. 2023)).

Even if Wright were not entitled to dismiss her claims against Thomas and Twery under Rule 41(a)(1), the court would dismiss those claims. None of Wright's filings alleges any facts that plausibly suggest Thomas or Twery is liable for any wrongdoing.

### D. Proposed Claims Alleged Against Ward and Dowd

Lastly, the proposed third amended complaint alleges numerous claims against Ward and Dowd, the two attorneys whom the state court appointed as special commissioners to execute a deed transferring ownership of the property to Berrang. Wright's claims against Ward and Dowd are duplicative and somewhat difficult to follow, but at bottom, she asserts that they acted fraudulently and without legal authority when they executed a special commissioner's deed on June 9, 2025, granting Berrang full ownership of the property. Wright asserts a due process claim under 42 U.S.C. § 1983 and a civil-rights conspiracy claim under § 1985, as well as several state claims related to the same events. (*See* Prop. TAC at 8–14, 16–20.)

The proposed third amended complaint fails to state a § 1983 or § 1985 claim against Ward or Dowd. There is no factual support for Wright's naked assertions that Ward or Dowd acted without legal authority when preparing a draft of the court order that appointed them as special commissioners or when executing the special commissioner's deed. As Wright's exhibits reflect, the state court signed and entered an order on May 7, 2025, that granted

Berrang possession of the property, appointed Ward and Dowd as special commissioners without bond, and directed them to deed the property to Berrang. (*See* Dkt. 130-20.)

It appears that Wright mostly takes issue with the court order itself, which she says unlawfully deprived her of property without notice or a hearing. (*See* Prop. TAC at 10.) Wright has not plausibly alleged that any due process violation occurred. The state court's May 7, 2025 order states that Wright had failed to appear at a hearing following notice to both of her known addresses. (*See* Dkt. 130-20.) Wright received notice of that hearing but asserted that the state court lacked the authority to proceed because she had removed the partition suit to federal court. (*See* Prop. TAC at 8; Dkt. 130-22; Dkt. 130-23.) As this court has repeatedly told her, she never properly removed the case. To the extent that Wright wishes to challenge the state court's May 7, 2025 order, she must file an appeal with the appropriate state court.

Wright's federal claims against Ward and Dowd therefore fail as a matter of law, and the court will decline to exercise supplemental jurisdiction over any remaining state claims.[9]

## IV.    Conclusion

For the reasons outlined above, the court will **GRANT** the motions to dismiss filed by Select Bank (Dkt. 23) and Berrang (Dkt. 100). The court will **DISMISS** all of Wright's claims **without prejudice**. The court will **DENY** Wright's motion for leave to file a second amended complaint (Dkt. 76), her motion for leave to file a corrected second amended complaint (Dkt.

---

[9] Wright also raises concerns about the fairness of the state partition suit based on allegations that Ward, Dowd, and Berrang have a relationship with a "substitute judge" in the Circuit Court of Highland County (who does not appear to have played any role in the partition suit), and that Dowd has served as Commonwealth's Attorney and County Attorney for Highland County. (*See* Compl. ¶¶ 14, 30–31; Prop. SAC ¶¶ 38–41.) Wright further alleges that Dowd "has a documented history of prosecutorial misconduct and ethical violations." (Compl. ¶ 15.) Those allegations are insufficient to support a due process claim. Wright's pleadings also include a few allegations about misconduct by Juliane Smith, Wright's former attorney in the partition proceedings. (*See* Compl. ¶¶ 32–35; Prop. SAC ¶ 36; Prop. TAC at 4.) It is unclear whether Wright intended to name Smith as a defendant, and she has not stated any plausible claim against Smith.

105), and her motion for leave to file a third amended complaint (Dkt. 130) as futile. Finally, because it will dismiss all of Wright's claims, the court will **DENY** all of Wright's other pending motions as moot.

An appropriate Order will issue.

**ENTERED** this 28th day of July, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE